CASE NO. 14-1290
_____

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
_____

MOUNIA ELYAZIDI,

Appellant

v.

SUNTRUST BANK AND
MITCHELL RUBENSTEIN & ASSOCIATES

Appellees
_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF MARYLAND
The Hon. Deborah K. Chasanow
_____

BRIEF OF APPELLANT
_____

Ernest P. Francis
ERNEST P. FRANCIS, LTD.
1655 North Fort Myer Drive
Suite 700
Arlington, VA 22209
(703) 683-5696
epfrancisltd@verizon.net

Counsel for Appellant

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. <u>14-1290</u>    Caption: <u>Mounia Elyazidi v. Suntrust Bank, et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Mounia Elyazidi</u>
(name of party/amicus)

_____

 who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature:  /s/Ernest P. Francis                          Date:    April 16, 2014

Counsel for:  Mounia Elyazidi

# CERTIFICATE OF SERVICE
**************************

I certify that on    April 16, 2014    the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/Ernest P. Francis                                April 16, 2014
(signature)                                          (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __14-1290__        Caption: __Elyazidi v. Suntrust Bank, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Mitchell Rubenstein & Associates, P.C., d/b/a Rubenstein and Cogan__
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.       Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.       Does party/amicus have any parent corporations?                              ☐YES ☑NO
         If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.       Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                              ☐YES ☑NO
         If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature:  /s/ Ronald S. Canter        Date:    04/02/2014

Counsel for:  Appellee

## CERTIFICATE OF SERVICE
**************************

I certify that on    April 2, 2014    the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Ernest P. Francis, Esq.
Law Office of Ernest P. Francis
1655 N. Fort Myer Drive, Suite 700
Arlington, VA 22209
epfrancisltd@verizon.net
Attorney for Appellant

Matthew A. Egeli, Esq.
John R. Griffin, Esq.
HARTMAN AND EGELI LLP
116 Defense Hwy, Suite 300
Annapolis, MD 21401
matthew.egeli@hartmanegeli.com
john.griffin@hartmanegeli.com
Attorneys for Suntrust Bank

/s/ Ronald S. Canter                04/02/2014
_____            _____
(signature)                          (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-1290__     Caption: __Mounia Elyazidi v. SunTrust Bank__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__SunTrust Bank__
(name of party/amicus)

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?                            ☑ YES ☐ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

    SunTrust Banks, Inc.

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                              ☑ YES ☐ NO
    If yes, identify all such owners:

    SunTrust Banks, Inc.

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?     ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)   ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?     ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____     Date: _____ April 14, 2014 _____

Counsel for: SunTrust Bank

## CERTIFICATE OF SERVICE
****************************

I certify that on _____ April 14, 2014 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____     _____ April 14, 2014 _____
        (signature)                        (date)

- 2 -

TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  vii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ix

JURISDICTIONAL STATEMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . .  2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

I.    Facts Relevant to the Issues Presented for Review . . . . . . . . . . . . . . . . . . . .  3

II.   Relevant Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

III.  Rulings Presented for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

SUMMARY OF THE ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

I.    The District Court Erred in Dismissing Elyazidi's Claims for False
      Statements as to Attorney's Fees and Collection of Amounts Not
      Due Under Contract or By Law Since Defendant MRA Made
      Precise Statements Not Estimates as to Fees, a False Statement Does
      Not Cease to Be Actionable If It Becomes True, and the FDCPA
      Applies to Court Filings  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

II.   The District Court Erred in Holding that a Debt Collector May Make
      Public Disclosure of an Alleged Debtor's Social Security Number and
      Thereby Coerce Payment Since the Debt Collector's Intent in Making
      that Disclosure and a Threat By the Debt Collector Are Irrelevant  . . . . . .  21

III.     The District Court Incorrectly Held that the MCDCA and MCPA
         Did Not Apply Outside Maryland When MRA and SunTrust Both
         Had Physical Presence in Maryland, Nothing in Those Consumer
         Protection Statutes Forbade Application Outside Maryland, and
         What Occurred Outside Maryland Was the Result of What
         Occurred in Maryland . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

STATEMENT AS TO WHY THE COURT SHOULD HEAR ORAL
ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

CERTIFICATE OF COMPLIANCE WITH TYPEFACE
AND LENGTH LIMITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

ADDENDUM OF STATUTES AND RULES . . . . . . . . . . . . . . . . . . . . . . . . . 33

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

TABLE OF AUTHORITIES

CASES

Alaska Packers Ass'n v. Industrial Accident Comm'n,
  294 U.S. 532 (1935) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Allen ex rel. Martin v. LaSalle Bank, N.A.,
  629 F.3d 364 (3d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Anand v. Ocwen Loan Servicing, LLC,
  ___ F.3d ___, 2014 U.S. App. LEXIS 10557 (4th Cir., June 6, 2014) . . . . . . . . . 14

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Attorney General v. Dickson,
  717 F. Supp. 1090 (D. Md. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Bell Atlantic Corp. v. Twombly,
  550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Carolina Trucks & Equipment, Inc. v. Volvo Trucks, Inc.,
  492 F.3d 484 (4th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Consumer Protection Division v. Outdoor World Corp.,
  603 A.2d 1376 (Md. Ct. Spec. App.), cert. denied,
  610 A.2d 796 (Md. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 29

Cox v. Hagan,
  100 S.E. 666 (Va. 1919) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

Fariasantos v. Rosenberg & Associates, LLC,
  Civil Action No. 3:13CV543, 2014 U.S. Dist. LEXIS 30898
  (E.D. Va., Mar. 10, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

Feltman v. Blatt, Hasenmiller, Lebisker & Moore, LLC,
    2008 WL 5211024 (N.D. Ill. Dec. 11, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Glover v. Federal Deposit Ins. Corp.,
    698 F.3d 139 (3rd Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Hauk v. LVNV Funding, LLC,
    749 F. Supp.2d 358 (D. Md. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Johnson v. BAC Home Loans Servicing, LP,
    867 F. Supp. 2d 766 (E.D.N.C. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Johnson v. Riddle,
    443 F.3d 723 (10th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Jordan v. John Soliday Financial Group, LLC,
    Case No. 1:09-CV-707, 2010 U.S. Dist. LEXIS 36352
    (N.D. Ohio Apr. 12, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Kimber v. Federal Finan. Corp.,
    668 F. Supp. 1480 (M.D. Ala. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Kojetin v. C U Recovery, Inc.,
    212 F.3d 1318 (8th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Lembach v. Bierman,
    Nos. 12-1723, 12-1746, 2013 U.S. App. LEXIS 12094
    (4th Cir. Jun. 12, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Millennium Communs. & Fulfillment, Inc. v. Office of the Attorney General,
    761 So. 2d 1256 (Fla. Ct. App. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Philips v. Pitt County Mem'l Hosp.,
    572 F.3d 176 (4th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Pittenger v. John Soliday Finan. Group, LLC,
    2010 WL 1856224 (N.D. Ohio May 10, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . 23

Piper v. Portnoff Law Assocs.,
  262 F. Supp. 2d 520 (E.D. Pa. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Randolph v. IMBS, Inc.,
  368 F.3d 726 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Reichert v. National Credit Sys., Inc.,
  531 F.3d 1002 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Sayyed v. Wolpoff & Abramson,
  485 F.3d 226 (4th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Stewart v. Bierman,
  859 F. Supp. 2d 754 (D. Md. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Stolicker v. Muller, Muller, Richmond, Harms, Myers, & Sgroi,
  1:04cv733, 2005 U.S. Dist. LEXIS 32404 (W.D. Mich. Sept. 9, 2005) . . . . 15-16

SunTrust Bank v. Goldman,
  29 A.3d 724 (Md. Ct. Spec. App.  2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. Nat'l Fin. Servs., Inc.,
  98 F.3d 131 (4th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Warren v. Sessoms & Rogers, P.A.,
  676 F.3d 365 (4th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Woloohojian Realty Corp. v. Bogosian,
  2008 U.S. Dist. LEXIS 832230 (D.R.I., Oct. 17, 2008) . . . . . . . . . . . . . . . . . . 30

STATUTES

15 U.S.C. § 1692 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

15 U.S.C. § 1692d . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

15 U.S.C. § 1692e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

15 U.S.C. § 1692e(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

15 U.S.C. § 1692f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 21, 23, 24, 25

15 U.S.C. § 1692f(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15, 16

15 U.S.C. § 1691f(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

15 U.S.C. § 1691f(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

15 U.S.C. § 1692k(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

15 U.S.C. § 1692k(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

15 U.S.C. § 1692k(a)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

15 U.S.C. § 1692k(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

15 U.S.C. § 1692k(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

15 U.S.C. § 1692k(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

15 U.S.C. § 6801(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Md. Code Ann., Com. Law § 13-101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Md. Code Ann., Com. Law § 13-408(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Md. Code Ann., Com. Law § 14-201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Md. Code Ann., Com. Law § 14-203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

RULES

Fed. R. App. P. 4(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. App. P. 26(a)(1)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Rule 8.5(a)(1) of the Maryland Rules of Professional Conduct for Lawyers . . . . 30

Rule 7B:2 of the Supreme Court of Virginia . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## JURISDICTIONAL STATEMENT

The United States District Court for the District of Maryland ("District Court") (from whose judgment this appeal is taken) had jurisdiction over Appellant Mounia Elyazidi's case under 15 U.S.C. § 1692k(d) because the Complaint[1] that the she filed alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. Joint Appendix ("J.A.") 6-18. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291 because the District Court entered a final judgment, that resolved all claims of all parties as to damages, on February 28, 2014. J.A. 217-18. Under Fed. R. App. P. 4(a)(1), Elyazidi's notice of appeal was timely filed if it was filed thirty days after the entry of judgment. Because the thirtieth day after the entry of judgment was Sunday, March 30, the notice of appeal that she filed on Monday, March 31, 2014, J.A. 242, was timely under Fed. R. App. P. 26(a)(1)(C).

---

[1] All references to the "Complaint" are to the amended complaint filed with the District Court on August 22, 2013.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I.      Whether the District Court erred when it held that a debt collector was not liable to a purported debtor under the FDCPA for misrepresenting the amount of attorney's fees payable and seeking to collect from the debtor fees for services not performed merely because the statements as to fees were what the court characterized as "estimates" notwithstanding the absence of qualifying language, became true after they were made, and were contained in court filings.

II.     Whether the District Court erred in holding that a debt collector was not liable to a purported debtor under the FDCPA for disclosing the debtor's social security number in a public filing because the disclosure was unintentional and the debt collector did not threaten the debtor before the filing.

III.    Whether the District Court erred in holding that the Maryland Consumer Debt Collection Act and the Maryland Consumer Protection Act did not apply to a filing in a Virginia court when those filings were prepared in Maryland, the debt collector and the creditor and the debt collector and creditor are physically present in Maryland and decided in Maryland to make the filings in Virginia and gave instructions in Maryland for the filings in Virginia.

## STATEMENT OF THE CASE

I.    Facts Relevant to the Issues Presented for Review

The conduct of which Elyazidi has complained began when Mitchell Rubenstein & Associates ("MRA") filed a warrant in debt against Elyazidi in the General District Court for Fairfax County ("Fairfax GDC") on behalf of SunTrust Bank ("SunTrust") on June 12, 2012.  J.A. 219.  In this action in the Fairfax GDC, SunTrust sought to recover from Elyazidi an amount allegedly due after she cashed a check on a consumer checking account in her name and overdrew that account.  J.A. 214-216.  In August, 2012, the Fairfax GDC ordered that SunTrust file a bill of particulars for its claim against Elyazidi.  J.A. 17.  A bill of particulars is intended to set forth the details that support a plaintiff's claim in a Virginia general district court; under Rule 7B:2 of the Supreme Court of Virginia, the court may exclude evidence at trial as to any matter not described in the bill of particulars.  The bill of particulars that MRA filed included Elyazidi's social security number in an attachment to that filing, which as a court record became available to the public.  J.A. 11.

Both MRA and SunTrust are physically located in Maryland.  MRA has its one and only office in Gaithersburg, Maryland, and is a law firm engaged in the

business of collecting consumer debts.  J.A. 7.  Defendant SunTrust is a bank with dozens of branches in Maryland. J.A. 6.

The filings by MRA in its representation of SunTrust in the Fairfax GDC action against Elyazidi included numerous misrepresentations as to the amount of attorney's fees due as of the dates of those filings.  While these filings were made in Virginia, the filed documents were prepared in Maryland, the instructions to file them came from Maryland, and the decision of MRA and SunTrust to file them was made in Maryland.  J.A. 12.

**1. November 29, 2010 Affidavit.**  As alleged in paragraphs 17 and 18 of Elyazidi's Complaint, the first such false statement as to attorney's fees came in a November 29, 2010 affidavit, which MRA filed with the Fairfax GDC on June 12, 2012 with the warrant in debt.  J.A. 9.  In this affidavit, an employee of SunTrust swore that "reasonable attorney's fees of 25% and the costs of this proceeding is [sic] justly due and owing from debt [sic] to SunTrust Bank."  J.A. 9.

This statement is false for two reasons.  First, contrary to what is stated in that affidavit, such fees and costs were not then due from Elyazidi because no such fees or costs had then been incurred by SunTrust since MRA had provided no services as of that date.  This is confirmed by the "Affidavit in Support of Claim for Attorney's Fees" ("February 27 affidavit"), J.A. 21-22, and that affidavit shows

that no fees or expenses had been incurred as of November 29. J.A. 21-22. MRA

filed that affidavit on behalf of SunTrust with the Fairfax GDC on February 27,

2013. J.A. 10. Second, the statement represents that a flat percentage of 25 per

cent is due for attorney's fees when all that the contract upon which Defendant

sued Elyazidi provides is that a depositor would be liable for "attorney's fees up to

25 per cent . . . of the amount owed to us" rather than the flat percentage alleged

irrespective of the services rendered. J.A. 9-10.

    **2. June 11, 2012 Affidavit.** A second set of false statements is contained in

a June 11, 2012, affidavit ("June 11 Affidavit") that MRA filed with the Fairfax

GDC with the warrant in debt.

        **a. Attorney's fees as a flat percentage.** The June 11 Affidavit's

first blatant untruth is that MRA (in the words of paragraph 3 of the affidavit) was

"entitled to indemnification for 25 per cent [sic] to the contract, note or other

instrument of agreement between the parties." J.A. 8-9. As noted, this statement

is false because MRA was not entitled to a flat 25 per cent of the amount due under

the contract but instead, according to the contract upon which MRA brought its

claim, **up to** 25 per cent of the amount due under the contract. J.A. 9. The falsity

of the statement in the June 11 Affidavit is well-illustrated by a comparison with

what MRA stated in the February 27 affidavit. In that affidavit, counsel states that

SunTrust was "entitled to indemnification for attorney's fees in an amount up to 25% of the sums due under the contract, note or other instrument of agreement executed between the parties."[2]  J.A. 21-22..

**b. Fees for collection.**  The next untruth in the June 11 Affidavit is the statement in paragraph 4 that "counsel anticipates 20 additional hours to satisfy its judgment by execution, based upon similar cases and known asset information." What Elyazidi has alleged in paragraphs 27, 29, and 30 of her Complaint is that Defendant had no basis whatsoever for this statement.  J.A. 6.  The affiant had no prior cases or asset information that would even arguably justify 20 hours for collecting the judgment after its entry.  Instead, the 20 hour figure was simply plucked by MRA from thin air in order to provide a means of stating that 25 per cent was then due for attorney's fees.

**3. Warrant in debt.**  In the warrant in debt that MRA filed against Elyazidi, MRA states that "Defendant(s) owe Plaintiff(s) a debt in the sum of $9490.82 . . . and $2372.71 attorney's fees . . .", and that document on its face shows that counsel signed the warrant in debt on June 11, 2012.  J.A. 25.  As alleged in

---

[2] This is not the only discrepancy between the two affidavits.  In the June 11 Affidavit, the affiant states that she has been practicing for 17 years.  Yet a mere eight months later the same affiant states in the February 27 Affidavit that she has been practicing for 21 years.

-6-

paragraph 25 of the Complaint, the statement that $2372.71 is due as of that date is false because the June 11 Affidavit by SunTrust's counsel states that counsel at that point had at that time only spent 1 hour at an hourly rate of $250.00. Accordingly, the most that was due for attorney's fees at that time (subject to approval by the court as reasonable) was $250.00 rather than the $2372.71 that MRA averred was due.

Again, MRA and SunTrust stated in both the warrant in debt and the November 29 affidavit that 25 per cent (and $2372.71 is 25 per cent of the principal amount allegedly due) was due for attorney's fees. The logical inference from that is that Elyazidi had to pay that amount to satisfy the debt, and that inference in her favor is controlling for purposes of a motion to dismiss.

**4. February 27, 2013 Affidavit.** The final false statement is the repetition in the February 27, 2013, affidavit by MRA of what the affiant had already stated in the June 11 Affidavit. In language apparently lifted from paragraph 4 of the June 11 Affidavit, MRA states in the paragraph with the very same number in the February 27 affidavit "counsel anticipates 20 additional hours to satisfy its judgment by execution, based upon similar cases and known asset information." This statement is false for the same reasons that the identical statement was false in the June 11 Affidavit.

-7-

After entering a judgment against Elyazidi in favor of SunTrust for the principal amount of the alleged debt on December 19, 2012, the Fairfax GDC on February 27, 2013, entered a judgment in favor of SunTrust for attorney's fees in an amount equal to 25 per cent of the principal.  J.A. 222-23.  The court did so after receiving the February 27 affidavit that showed that the attorney from MRA had spent only an hour on the case prior to August 8, 2012.  J.A. 21-22, 222-23.

II.    Relevant Procedural History

This case began with a complaint that the Elyazidi filed in the Circuit Court for Montgomery County, Maryland against MRA and SunTrust.  J.A. 2.  After Defendants removed the case from the Circuit Court, Elyazidi filed an amended complaint.  J.A. 2-3.  Of the seven counts in the amended complaint, J.A. 6-18, only five are relevant to this appeal.[3]  In Count I, Elyazidi alleged that both MRA and SunTrust had violated the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law § 14-201 et seq., through the assertion of a right to payment for attorney's fees without the performance of services to earn those fees.  Count II alleged a violation of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-101 et seq. by SunTrust through false

---

[3] Elyazidi has not appealed the dismissal of Counts V and VII of her Complaint.

statements as to attorney's fees due in the Fairfax GDC action against Elyazidi.

Count III alleged that MRA had violated 15 U.S.C. § 1692e(2) in the FDCPA

through false statements as to attorney's fees.  In Count IV, Elyazidi alleged that

MRA had violated 15 U.S.C. § 1692f(1) in the FDCPA because MRA sought

recovery from her of attorney's fees for services not performed when neither any

statute nor contractual provision allowed recovery of unearned attorney's fees.

Finally, Count VI alleged a violation of 15 U.S.C. § 1692f because MRA had

publicly disclosed Elyazidi's social security number as a part of its bill of

particulars.

Both MRA and SunTrust moved to dismiss the complaint for failure to state

a claim.  J.A. 23-24, 29.  The court below granted those motions on February 28,

2014, and dismissed all counts in Elyazidi's complaint for failure to state a claim,

and this appeal followed.

III.    Rulings Presented for Review

A.    The first ruling as to which Elyazidi assigns error is the District

Court's dismissal of Counts III and IV of her complaint; these counts alleged

FDCPA violations through false statements as to attorney's fees as well as the

attempted collection of unearned attorneys fees without any provision that allowed

recovery of such fees.  Argument, Part I, <u>infra.</u>

B.      The District Court's second incorrect ruling is the dismissal of Count

VI, which alleged an FDCPA violation through disclosure of Elyazidi's social

security number.  Argument, Part II, <u>infra.</u>

C.      The final erroneous ruling is the District Court's erroneous dismissal

of Counts I and II, which alleged violations of Maryland consumer protection laws,

on the ground that they did not apply to court filings in Virginia.  Argument, Part

III, <u>infra.</u>

## SUMMARY OF THE ARGUMENT

The District Court's decision dismissing the Complaint at bar for failure to

state a claim is erroneous in three ways.  In dismissing claims for violation of the

FDCPA through false statements that attorney's fees not earned were due and

collection of those unearned fees through a legal action filed when the fees were

not due, the court incorrectly characterized statements as to the amount of the

attorney's fees due as "estimates" even though no language indicated those

statements were estimates as opposed to exact statements of what was due.  The

statements as to attorney's fees would not have been regarded as estimates under

the least sophisticated consumer standard since those statements reasonably could

have been regarded as statements of what was then due.  The court also incorrectly

held that the statements were not a basis for an action under the FDCPA, even

-10-

though they were false when made, because they were true as of the date of judgment for attorney's fees. Statements false when made do not cease to violate the FDCPA's absolute prohibition on false statements merely because they become true with time. Finally, the court below incorrectly held that the statements were not actionable because they were in court filings even though this Court has previously held that the presence of a statement in a court filing is no bar to relief under the FDCPA if that statement violates the FDCPA.

The next error by the court below was its determination hat public disclosure of a debtor's social security number does not violate the FDCPA's prohibition on unfair or unconscionable means to collect a debt even though the prospect of such disclosure may coerce a debtor to pay a debt even if he or she does not owe it. The court incorrectly found that lack of intent to make the disclosure precluded liability even though the FDCPA is a strict liability statute so that intent is not required. Similarly, the court incorrectly found Elyazidi had failed to state a claim because of the absence of a threat by MRA even though the statute does not require a threat for liability.

Finally, the court wrongly held that the MCDCA and MCPA did not apply to filings in Virginia even though MRA and SunTrust are located in Maryland, the filed documents originated in Maryland, and the instructions to file them came

from Maryland after a decision in Maryland to file those documents.  The court

also applied the incorrect rule of statutory construction inasmuch as it required a

showing that the Maryland consumer protection statutes at issue applied outside

Maryland to Maryland residents rather than a showing that they did <u>not</u> apply

outside Maryland to those present in Maryland, and accordingly the court erred in

dismissing the claims under the Maryland statutes as well as those under the

FDCPA.

## ARGUMENT

Section § 1692k(a) of 15 U.S.C. creates a private right of action for violation

of the provisions of the FDCPA.  A debt collector who fails to comply with the

FDCPA's provisions as to any person is liable to that person for not only actual

damages, § 1692k(a)(1), but also statutory damages of up to $1,000, §

1692k(a)(2)(A), and attorney's fees, § 1692k(a)(3).  A claim under § 1692k(a) has

three elements:   (1) the plaintiff "was the object of collection activity arising from

a consumer debt as defined by the FDCPA, (2) the defendant is a debt collector as

defined by the FDCPA, and (3) the defendant engaged in an act or omission

prohibited by the FDCPA."  <u>Johnson v. BAC Home Loans Servicing, LP</u>, 867 F.

Supp. 2d 766, 776 (E.D.N.C. 2011).  As the court below noted, J.A. 232, MRA did

not contend that Elyazidi had failed to allege either that MRA was seeking to

-12-

collect a consumer debt or that it was a debt collector.  Instead, what is at issue in this appeal is whether Elyazidi has alleged a violation of the statute.

The Maryland statutes that were the basis of Counts I and II of the complaint also create private rights of action against those who violate them.  Thus Md. Code Ann., Com. Law § 13-408(a) provides a private civil remedy against a person who violates the MCPA, and Md. Code Ann., Com. Law § 14-203 does likewise for a violation of the MCDCA.

The standards that this Court must employ is deciding whether a district court has properly dismissed a complaint for failure to state a claim are well-established.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. At 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2008)).  "A complaint has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft, 129 S. Ct. at 1949.  Nonetheless, "a complaint attacked by a motion to dismiss . . . does not need detailed factual allegations."  Twombley, 550 U.S. at 555.  In deciding a motion to dismiss for failure to state a claim, the court will "accept as true all well-pleaded factual allegations and view the complaint in the

light most favorable to the plaintiff." Philips v. Pitt County Mem'l Hosp., 572

F.3d 176, 180 (4th Cir. 2009). "When there are well-pleaded factual allegations, a

court should assume their veracity and then determine whether they plausibly give

rise to an entitlement to relief." Ashcroft, 129 S. Ct. at 1950. The standard of

review for dismissal of a complaint for failure to state a claim is de novo. Anand v.

Ocwen Loan Servicing, LLC, ___ F.3d ___, 2014 U.S. App. LEXIS 10557 at *3

(4th Cir., June 6, 2014)

As the following discussion shows, Elyazidi has more than adequately

alleged facts that show a violation of the FDCPA's prohibitions on false statements

and the employment of unfair and unconscionable means to collect a debt.

Moreover, the infirmity that the District Court found in the claims under the

MCDCA and the MCPA was not any failure to allege facts showing a violation but

instead only that those statutes did not apply outside Maryland.

I.     The District Court Erred in Dismissing Elyazidi's Claims for False
       Statements as to Attorney's Fees and Collection of Amounts Not Due Under
       Contract or By Law Since Defendant MRA Made Precise Statements Not
       Estimates as to Fees, a False Statement Does Not Cease to Be Actionable If
       It Becomes True, and the FDCPA Applies to Court Filings

Counts III and IV of Elyazidi's complaint allege (1) false statements by

MRA as to attorney's fees recoverable from Elyazidi because those statements

included amounts not earned for services not performed and (2) efforts to compel

-14-

Elyazidi to pay the unearned fees even though she had no legal or constractual

obligation to do so.  The facts alleged showed a violation of 15 U.S.C. § 1692e as

well as 15 U.S.C. § 1692f(1), and thus the dismissal of Counts III and IV was

error.  Section 1692e provides in general that "[a] debt collector may not use any

false, deceptive, or misleading representation or means in connection with the

collection of any debt."  This section then provides "a non-exhaustive list of

prohibited conduct."  <u>Stewart v. Bierman</u>, 859 F. Supp. 2d at 754, 759 (D. Md.

2012) (quoting <u>United States v. Nat'l Fin. Servs., Inc.</u>, 98 F.3d 131, 135 (4th Cir.

1996)).  One of the enumerated prohibitions is that in § 1692e(2), which forbids

"[t]he false representation of (A) the character, amount, or legal status of any debt;

or (B) any services rendered or compensation which may be lawfully received by

any debt collector for the collection of a debt."  Section 1692f(1) prohibits

"collection of any amount (including any interest, fee, charge, or expense

incidental to the principal obligation) unless such amount is expressly authorized

by the agreement creating the debt or permitted by law."

 The affidavits that MRA submitted with the warrant in debt and the warrant

in debt itself all claimed that Elyazidi owed twenty five per cent of the principle

balance as of the dates of those documents even though services worth that amount

(at the hourly rate of $250.00) had not yet been performed.  In <u>Stolicker v. Muller,</u>

-15-

Muller, Richmond, Harms, Myers, & Sgroi, 1:04cv733, 2005 U.S. Dist. LEXIS

32404 (W.D. Mich. Sept. 9, 2005), the court held that use of a liquidated amount

for attorney's fees when such fees were required to be reasonable violated the

prohibition in the FDCPA on false statements.  2005 U.S. Dist. LEXIS 32404 at

*9-*12.  See also Kojetin v. C U Recovery, Inc., 212 F.3d 1318 (8th Cir. 2000)

(using percentage rather than actual collection costs contrary to provisions of

contract violated FDCPA),  Piper v. Portnoff Law Assocs., 262 F. Supp. 2d 520,

528 (E.D. Pa. 2003) (charging a flat $150 for attorney's fees without any showing

of time needed to perform services violated the FDCPA).  In the instant case, the

fees that the contract entitled MRA to recover for its services were required to be

reasonable and actually incurred.  Because fees in an amount equal to the amounts

stated as due as of the dates of the affidavits and the warrant in debt had not been

incurred as of the dates of those documents, MRA's overstatement of the amounts

due as of those dates is a false statement actionable under the FDCPA.  Moreover,

no provision of law or any contract permitted MRA to recover unearned fees, and

the effort to collect those fees therefore violated § 1692f(1).

The contractual provision allowing recovery of attorney's fees up to 25 per

cent of the principal balance did not mean that 25 per cent was recoverable

irrespective of the services performed.  The critical words in that contractual

-16-

provision are that such fees are recoverable in an amount "up to" 25 per cent of the principal amount owed to SunTrust. This provision did not authorize a recovery of 25 per cent from Elyazidi without regard to the services (or lack thereof) that SunTrust's counsel performed. Instead, MRA was required to show the reasonableness of those fees for which it sought to mulct Elyazidi. In Maryland, a creditor seeking to recover attorney's fees under a contractual provision must establish the reasonableness of the fees that it seeks to recover from an opposing party even when a contractual provision permits a percentage recovery. SunTrust Bank v. Goldman, 29 A.3d 724, 734 (Md. Ct. Spec. App. 2011). The law of Virginia is no different as it applies to the contract upon which Defendant sought recovery from Elyazidi. In Cox v. Hagan, 100 S.E. 666 (Va. 1919), the Virginia Supreme Court addressed a provision for recovery of attorney's fees up to a certain percentage. It noted that "[t]he rule in this State is, in effect, that such a contract is valid and enforceable to the extent of a reasonable attorney's fee, incurred as aforesaid, not exceeding the percentage named in the note." 100 S.E. at 674. As applied at bar, the contractual provision for a recovery by SunTrust of up to 25 per cent meant that the 25 per cent was a limit on the recovery of attorney's fees, but SunTrust was still required to show that the fees incurred were reasonable.

The discussion by the court in Cox shows why the affidavits and statements

-17-

of by MRA and SunTrust were false.  Under Cox, attorney's fees are recoverable

under an "up to" provision only to the extent that such fees are actually incurred.

In the instant case, MRA through its perjured affidavits was making a claim for

attorney's fees that had not been incurred at the time of SunTrust's claim for them,

and accordingly MRA was not entitled to collect such fees from Elyazidi to the

extent they exceeded what was due for services actually rendered.

The District Court found that Elyazidi had not stated a claim because MRA's

statements in the affidavits and warrant in debt as to attorney's fees were

"estimates".  Those statements were not estimates, they were statements of what

was due as of the dates of those documents.  Nothing in those statements indicated

that they were estimates or had any element of uncertainty.  Moreover, MRA and

SunTrust stated the amount due for attorney's fees to the penny; that is hardly

characteristic of an estimate.  Finally, had Elyazidi suffered a default instead of

defending against the collection action, the statements as to attorney's fees would

not have been treated as estimates; instead, judgment would have been entered

against her for attorney's fees in the amount stated as due.

Moreover, Elyazidi's claims need to be evaluated in light of the least

"sophisticated consumer standard" applicable to FDCPA claims.  Fariasantos v.

Rosenberg & Associates, LLC, Civil Action No. 3:13CV543,  2014 U.S. Dist.

-18-

LEXIS 30898 at *10 (E.D. Va., Mar. 10, 2014).  Under this standard, a statement

violates the Act if it can be reasonably read as having two meanings, one of which

is inaccurate.  <u>Fariasantos</u>, 2014 U.S. Dist. LEXIS 30898 at *11-*12.  The

statements in the affidavits and warrant in debt could reasonably be understood as

meaning that Elyazidi owed 25 per cent of the principle balance as of the dates of

the affidavits and warrant in debt.  Inasmuch as that was not the amount due for

attorney's fees on those dates, those statements were false.

While the affidavits do contain the statement that the affiant anticipated at

least 20 hours to satisfy the judgment by execution based upon similar cases and

known asset information, this statement was false because (as alleged in the

Complaint) the affiant had no similar cases or known asset information that would

have justified anticipation of 20 hours for collection.  Complaint ¶¶ 27-30.  This

statement is false at least to the extent that it purports to be based on what did not

exist irrespective of whatever the affiant believed.

In holding that MRA had not made a false statement, the court below found

that the amount of fees accrued at the end of the case exceeded twenty five per cent

of the principal balance.[4]  What this suggests is that a statement can be false when

---

[4] The court also noted that the MRA attorney had not misrepresented the
hours that she worked.  This is immaterial because Elyazidi never alleged that she
did, but instead alleged only that she had misrepresented the total amount due for

-19-

made but not actionable under the FDCPA as long as it becomes true at some point after it is made.  This contravenes the flat prohibition in the FDCPA on false statements.  As the court noted in <u>Randolph v. IMBS, Inc.</u>, "[d]ebt collectors may not make false claims, period."  368 F.3d 726, 730 (7th Cir. 2004).  The fact that with time those statements might become true is irrelevant.

Finally, the court below appeared to hold that statements in court filings are not actionable under the FDCPA because such filings are directed to the court rather than the debtor.  J.A. 234.  This argument is foreclosed by this Court's decision in the case of <u>Sayyed v. Wolpoff & Abramson</u>, 485 F.3d 226 (4th Cir. 2007), which held that the FDCPA does apply to what is filed in state court, and accordingly the District Court erred in dismissing Counts III and IV of the Complaint.

---

services.

II.    The District Court Erred in Holding that a Debt Collector May Make Public Disclosure of an Alleged Debtor's Social Security Number and Thereby Coerce Payment Since the Debt Collector's Intent in Making that Disclosure and a Threat By the Debt Collector Are Irrelevant

Count VI of the Complaint alleged that MRA had violated 15 U.S.C. § 1692f by including Debtor's social security number in a filing that became available to the public.  The District Court erred in holding this disclosure was not a violation because it unintentional and not accompanied by any threat to Elyazidi.

Section 1692f of 15 U.S.C. provides in general that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." "The statute does not define 'unfair or unconscionable,' but it does provide a non-exhaustive list of conduct that violates the section."  Hauk v. LVNV Funding, LLC, 749 F. Supp.2d 358, 366 (D. Md. 2010).  As this Court has recently noted, "the courts use § 1692f to punish conduct that FDCPA does not specifically cover."  Lembach v. Bierman, Nos. 12-1723, 12-1746, 2013 U.S. App. LEXIS 12094 at *14 (4th Cir. Jun. 12, 2013).

The case of Kimber v. Federal Finan. Corp., 668 F. Supp. 1480 (M.D. Ala. 1987), is instructive as to what conduct may constitute an unfair or unconscionable means to collect a debt.  The court in that case held that a legal action that the debt collector filed after the statute of limitations had expired was an unfair and unconscionable means to collect a debt.  668 F. Supp. at 1487.  In so holding the

-21-

court noted that the debtor might have lost the means to defend against the action with the passage of time, the debtor may be unaware of the statute of limitations defense, and the debtor may simply choose to pay the debt rather than spend the resources and energy to defend against the debt or suffer the embarrassment of appearing in court to do so.  Id.

Similarly, the disclosure of the debtor's social security number allows a debt collector to unfairly coerce payment of a debt.  As alleged in the Complaint, the public disclosure of a debtor's social security number may lead to identity theft.  If a debt collector is allowed to make public disclosure of a debtor's social security number, then a consumer might well elect to simply pay a debt (even if the consumer does not owe it) in order to avoid disclosure of his or her social security number and the resulting identity theft.  Even if the debt collector does not explicitly threaten disclosure of a consumer's social security number in a court filing, it does not need to make an explicit threat.  At the very least, counsel for the consumer will advise the consumer that the consumer may face public disclosure of the consumer's social security number, and the consequent identity theft, if a debt collector sues the consumer.  A consumer's payment of a debt under the

extortionate threat of catastrophic consequences such as identity theft is exactly what the face of the FDCPA shows it was designed to prevent.

In holding that § 1692f did not prohibit the public disclosure of Elyazidi's social security number, the court below relied upon the cases of Pittenger v. John Soliday Finan. Group, LLC, 2010 WL 1856224 (N.D. Ohio May 10, 2010), and Feltman v. Blatt, Hasenmiller, Lebisker & Moore, LLC, 2008 WL 5211024 (N.D. Ill. Dec. 11, 2008). These cases are inapposite because they hold that no claim for disclosure of social security numbers exists under 15 U.S.C. § 1692d, while Elyazidi is seeking relief under 15 U.S.C. § 1692f, and public disclosure of social security numbers is actionable under that section, see Jordan v. John Soliday Financial Group, LLC, Case No. 1:09-CV-707, 2010 U.S. Dist. LEXIS 36352 at *22-*24 (N.D. Ohio Apr. 12, 2010). More fundamentally, those cases fail to acknowledge the tremendous leverage that a debt collector has to compel payment through the threat of identity theft as a result of disclosure of an individual's social security number, and they disregard the express public policy in 15 U.S.C. § 6801(a) against disclosure of such non-public information when it is held by a financial institution such as the one that MRA represented in its case against Elyazidi.

The court below also erred in holding that MRA was not liable for violating § 1692f because that disclosure was what the court characterized as an "oversight." Even if MRA did act without intent, the lack of intent is irrelevant. As this court recently noted, the FDCPA "imposes liability without proof of an intentional violation." Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 375 (4th Cir. 2012) (quoting Allen ex rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364, 368 (3d Cir. 2011)). Indeed in Allen, the court characterized the FDCPA as a "strict liability" statute. Id. at 368.

The holding by the court below that lack of intent defeats the § 1692f claim is also contrary to 15 U.S.C. § 1692k(c). This section which provides

> A debt collector may not be held liable in any action brought under this title if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

This provision creates an affirmative defense for which the debt collector has the burden of proof. Reichert v. National Credit Sys., Inc., 531 F.3d 1002, 1005 (9th Cir. 2008). This defense has three elements: lack of intent, bona fide error, and maintenance of reasonable procedures reasonably adapted to avoid the error. Johnson v. Riddle, 443 F.3d 723, 727-28 (10th Cir. 2006). If the lack of intent to violate the statute by itself defeats a violation, then § 1692k(c) (with its

-24-

requirements beyond lack of intent) is surplusage, and that is not a permissible construction.  Glover v. Federal Deposit Ins. Corp., 698 F.3d 139, 149 (3rd Cir. 2012).

Finally, the District Court held that no violation had occurred because MRA had made no threat to Elyazidi concerning her social security number since MRA lacked any "sinister motive".  J.A. 236.  Again, motive is simply immaterial because the FDCPA is a strict liability statute. Threats are not an essential element of a violation of § 1691f, which contemplates liability even without threats.  Thus § 1691f(4) prohibits "[d]epositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument" and thereby prohibits such a deposit evan absent threats.  Similarly, § 1691f(6) "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property" under circumstances specified therein and thus prohibits nonjudicial action even when the same is not threatened.  Accordingly, the District Court erred in holding that the absence of a threat defeats a  § 1691f claim and in dismissing Count VI.

III.    The District Court Incorrectly Held that the MCDCA and MCPA Did Not
Apply Outside Maryland When MRA and SunTrust Both Had Physical
Presence in Maryland, Nothing in Those Consumer Protection Statutes
Forbade Application Outside Maryland, and What Occurred Outside
Maryland Was the Result of What Occurred in Maryland

Counts I and II alleged that both SunTrust and MRA had violated the

MCDCA and MCPA by stating under oath that Elyazidi owed attorney's fees for

services not performed and attempting to collect a percentage attorney's fee

irrespective of services performed.  In dismissing these counts, the District Court

did not address the issue of whether SunTrust or MRA had violated either statute.

Instead, the sole basis for dismissal of these counts was the incorrect determination

that neither statute had any application in the neighboring state of Virginia.  This

determination rests upon an erroneous statutory construction.

What is beyond peradventure is that both statutes would apply to SunTrust

and MRA for whatever they did in Maryland, where both are located.  SunTrust

has dozens of branches in Maryland, and MRA has its only office there.  Thus the

question is whether the MCDCA and the MCPA stop on the banks of the Potomac

or instead follow SunTrust and MRA into the neighboring state of Virginia.

In imposing a geographical limitation on the MCDCA and the MCPA, the

court below applied the rule that those statutes did not operate extraterritorially

because the conduct that was the basis for Counts I and II occurred entirely in

Virginia.  J.A. 239.  This is doubly wrong because it applies the wrong rule of construction and ignores the allegations of the complaint.

The District Court found no extraterritorial application for the MCDCA and the MCPA because nothing in those statutes made them extraterritorial.  J.A. 239. The court's approach in this regard is backwards: the applicable rule of construction is that a state's consumer protection statute applies to the dealings of a resident of that state with non-residents outside the state unless that statute by its terms is inapplicable to activities outside the state.  See, e.g., Millennium Communs. & Fulfillment, Inc. v. Office of the Attorney General, 761 So. 2d 1256, 1261 (Fla. Ct. App. 2000).  Nothing in either the MCDCA or the MCPA makes either of those statutes applicable only to Maryland residents.  In fact the Maryland courts have not addressed whether either statute is applicable to the dealings of a Maryland resident with non-residents.  The case of Consumer Protection Division v. Outdoor World Corp., 603 A.2d 1376 (Md. Ct. Spec. App.), cert. denied, 610 A.2d 796 (Md. 1992), upon which the court below relied, was not one in which a Maryland resident had violated the statutes in question.  Similarly, the case of Carolina Trucks & Equipment, Inc. v. Volvo Trucks, Inc., 492 F.3d 484 (4th Cir. 2007), involved an effort by South Carolina to regulate vehicle sales in Georgia by persons not present in South Carolina.

Furthermore, the applicable choice of law rule is that the law of the forum (in this case Maryland) applies absent a showing as to why it should not apply. As the Supreme Court has noted,

> *Prima facie* every state is entitled to enforce in its own courts its own statutes, lawfully enacted. One who challenges that right, because of the force given to a conflicting statute of another state by the full faith and credit clause, assumes the burden of showing, upon some rational basis, that of the conflicting interests involved those of the foreign state are superior to those of the forum.

<u>Alaska Packers Ass'n v. Industrial Accident Comm'n</u>, 294 U.S. 532, 547-48 (1935). Neither SunTrust not MRA made any showing as to how the interests of Virginia conflicted with those of Maryland. This is hardly surprising inamsuch as such a showing would necessitate a demonstration that Virginia allows false statements in filings in its court. The allowance of such filings <u>anywhere</u> is dubious.

Not only was the the District Court's rule of construction erroneous, its statement that the conduct occurred entirely within Virginia is also incorrect. The Complaint alleged conduct on the part of MRA and SunTrust in Maryland. MRA prepared the warrant in debt, the June 11 Affidavit, and the February 27 Affidavit with the false statements at its offices in Gaithersburg, Maryland, attached the November 29 Affidavit to the warrant in debt at that location, and from that location directed the filing of those items with the General District Court for

-28-

Fairfax County. J.A. 12. MRA received the instructions from Defendant SunTrust to file the warrant in debt, the November 29 Affidavit, the June 11 Affidavit, and the February 27 Affidavit with the false statements at its offices in Gaithersburg, Maryland. J.A. 12. In other words, what occurred in Virginia was nothing more than the consequence of what MRA and SunTrust had already decided to do in Maryland.

In <u>Attorney General v. Dickson</u>, 717 F. Supp. 1090 (D. Md. 1989), the Court noted that when conduct occurred in part outside the state, the state interest that would justify regulating in Maryland the conduct outside Maryland would need to be determined from the specific conduct in Maryland. In <u>Outdoor World Corp.</u>, the court noted that the preference for construing a statute as not having extraterritorial effect "does not mean, however, that a State cannot, through the proper regulation of activity occurring within its borders, also affect conduct occurring elsewhere." 603 A.2d at 1382. A state interest in what happens within its borders can justify what occurs beyond those borders.

Maryland does have a strong interest in regulating the conduct of its lawyers irrespective of where that conduct occurs. MRA is comprised of Maryland lawyers, and they are subject to Maryland law irrespective of where their conduct occurs. This is reflected in Rule 8.5(a)(1) of the Maryland Rules of Professional

-29-

Conduct for Lawyers. This provision states that "[a] lawyer admitted by the Court of Appeals to practice in this State is subject to the disciplinary authority of this State, <u>regardless of where the lawyer's conduct occurs</u> [emphasis added]." Like the authority of every other state over its lawyers, the authority of Maryland over its lawyers does not stop at the state's boundaries. <u>See</u>, <u>e.g.</u>, <u>Woloohojian Realty Corp. v. Bogosian</u>, 2008 U.S. Dist. LEXIS 832230, 2008 WL 4646109 (D.R.I., Oct. 17, 2008) (collecting cases). Accordingly, the filing of documents in Virginia that were created in Maryland, where MRA has its only office and where it and SunTrust elected to make the filings, are insufficient to sustain to remove the conduct at issue from regulation under the MCDCA and MCPA, and the dismissal of Counts I and II on the ground that those statutes had no extraterritorial application was error.

## CONCLUSION

The preceding discussion shows that the District Court erroneously dismissed Elyazidi's complaint for failure to state a claim. Accordingly, she requests that the judgment of the District Court be vacated and the case remanded to the District Court for further proceedings consistent with the instructions of this Court in its remand of the case.

## STATEMENT AS TO WHY THE COURT SHOULD
## HEAR ORAL ARGUMENT

Unfortunately the District Court's decision contains a number of errors that are not unique to it. These errors include its holdings that court filings are not subject to the FDCPA, disclosure of a putative debtor's social security number is consistent with the FDCPA, a debt collector may seek to collect unearned attorney's fees from a putative debtor, and a statement that is false when made does not violate the FDCPA if it later becomes true. A determination by this Court that the District Court erred in these holdings may have precedential significance. The Court would likely benefit from oral argument in reaching decisions as to precedential matters. Moreover, oral argument allows the Court to obtain clarification as to any points as to which the briefs may not be perfectly clear.

Respectfully submitted,

/s/Ernest P. Francis
Ernest P. Francis
ERNEST P. FRANCIS, LTD.
1655 North Fort Myer Drive, Suite 700
Arlington, VA 22209
(703) 683-5696
Fax (703) 683-2785
epfrancisltd@verizon.net

Counsel for Appellant

CERTIFICATE OF COMPLIANCE
WITH TYPEFACE AND LENGTH LIMITS

1.    This brief complies with the type-volume limitations of Fed. R. App. P.

32(a)(7)(B) because the brief contains 7013 words, excluding the parts of the

brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because

this brief has been prepared in a proportionally spaced typeface using Word

Perfect in 14 Point Times New Roman.


Dated: June 11, 2014                    /s/Ernest P. Francis_____
                                        Ernest P. Francis

## ADDENDUM OF STATUTES AND RULES

15 U.S.C. § 1692d provides:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

 (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

 (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

 (3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(a)(3) of this title.

 (4) The advertisement for sale of any debt to coerce payment of the debt.

 (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

 (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692e provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

 (1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.

 (2) The false representation of--

   (A) the character, amount, or legal status of any debt; or

   (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

 (3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

-33-

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(6) The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to--

　(A) lose any claim or defense to payment of the debt; or

　(B) become subject to any practice prohibited by this subchapter.

(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

(9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

(12) The false representation or implication that accounts have been turned over to innocent purchasers for value.

(13) The false representation or implication that documents are legal process.

(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

(15) The false representation or implication that documents are not legal process forms or do not require action by the consumer.

-34-

(16) The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 1681a(f) of this Title.

15 U.S.C. § 1692f provides:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

  (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

  (2) The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.

  (3) The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.

  (4) Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.

  (5) Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.

  (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--

    (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

    (B) there is no present intention to take possession of the property; or

    (C) the property is exempt by law from such dispossession or disablement.

  (7) Communicating with a consumer regarding a debt by post card.

  (8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

15 U.S.C. 1692k provides in pertinent part:

(a) Amount of damages.  Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of--
  (1) any actual damage sustained by such person as a result of such failure;
  (2) (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $ 1,000; or
    (B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $ 500,000 or 1 per centum of the net worth of the debt collector; and
  (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

. . . .

(c) Intent.  A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 6801(a) provides:

Privacy obligation policy.  It is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information.

Md. Code Ann., Com. Law § 13-408(a) provides:

Actions authorized. -- In addition to any action by the Division or Attorney General authorized by this title and any other action otherwise authorized by law, any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by this title.

Md. Code Ann., Com. Law § 14-203 provides:

A collector who violates any provision of this subtitle is liable for any damages proximately caused by the violation, including damages for emotional distress or mental anguish suffered with or without accompanying physical injury.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Brief of Appellants was on this 12th day of June, 2014, served by electronic means through the ECF system, which will then send a notification of such filing to Ronald S. Canter, Esq., at his office at The Law Offices of Ronald S. Canter, LLC, 200A Monroe Street, Suite 104, Rockville, MD  20850 through his e-mail address rcanter@roncanterllc.com and to Matthew A. Egeli, Esq., and John R. Griffin, Esq., at their office at Hartman and Egeli, LLP, 116 Defense Highway, Suite 300, Annapolis, MD 21401 through their e-mail addresses matthew.egeli@hartmanegeli.com and john.griffin@hartmanegeli.com


/s/Ernest P. Francis_____
Ernest P. Francis